IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES STOUT, #1279462 | § | |
| VS. | § | CIVIL ACTION NO. 6:07cv23 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Petitioner James Stout, an inmate confined in the Texas prison system, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

History of the Case

The Petitioner is in the custody of the Texas prison system pursuant to a Smith County conviction for the offense of aggravated assault with a deadly weapon, in violation of Tex. Pen. Code. § 22.02(b)(3) (Vernon Supp. 2003). More specifically, he was found guilty of aggravated assault on a person in retaliation for that person's service as an informant. A jury found him guilty, and the trial court assessed the punishment. On December 16, 2004, the Petitioner was sentenced to thirty years imprisonment. The Twelfth Court of Appeals affirmed the conviction on April 28, 2006. The Petitioner did not file a petition for a writ of certiorari.

The Petitioner filed an application for a writ of habeas corpus in state court on August 10, 2006. He alleged that he was entitled to relief because of ineffective assistance of counsel and violations of due process. In compliance with an order issued by the trial court, the Petitioner's trial and appellate attorneys filed affidavits in response to the application. On October 4, 2006, the trial court issued findings of fact and conclusions of law. The Texas Court of Criminal Appeals denied the application without written order on November 1, 2006.

1

The present petition for a writ of habeas corpus was filed on January 4, 2007. The Petitioner again alleged that he was entitled to relief because of ineffective assistance of counsel and violations of due process. The Director filed an answer on March 7, 2007. The Petitioner filed a rebuttal on March 22, 2007.

<u>Facts of the Case</u>

The Twelfth Court of Appeals stated the basic facts of the case as follows:

> Gary Halligan was a paid informer who worked with Smith County Narcotics Detective Steve Henry. Halligan gave information to Henry and also to other law enforcement agencies that led to arrests and prosecutions in twelve to fifteen drug cases.
>
> On April 13, 2004, Halligan called Henry very upset and scared. Henry told him to call the Tyler Police Department to report what happened because Tyler P.D. was much closer and could respond quicker. Halligan complied, and Officer Chris Turner was the first responder to the call. He found Halligan nervous and frightened. Halligan told him that around 10:20 p.m., while he was sitting on the sofa in his living room, a man he knew only as Tony came into his house, walked over to him, stuck a gun to his head, and threatened to kill him. Halligan told him that Tony (Appellant) was mad at him because of his work as a police informant.
>
> Sergeant Jason Bean, night shift patrol supervisor for Tyler P.D., also went to the scene and interrogated Halligan. Halligan told him that while he was watching television, a man he had seen only once and knew as Tony came into his house, put a Glock pistol to his head, and said he was going to kill Halligan for what he did. Halligan also told Sergeant Bean that Tony said he would be back later. Later that morning, Tyler P.D. received another call from Halligan saying someone was trying to break into his house. When the police arrived between 4:30 and 5:00 a.m., they found three people and their two vehicles at or near Halligan's house. They arrested all three persons, two for other felony violations and Appellant for the assault on Halligan. As Appellant was being taken to a police car, Halligan identified him as the man he had only known as Tony. Those arrested and the two vehicles were searched, but no weapons were found. Appellant was subsequently indicted for aggravated assault committed against Halligan in retaliation for his service as an informant. . . .
>
> In his testimony, Halligan told the jury that Appellant entered his house without warning, put a gun in Halligan's mouth, and said "I will kill you for what you did to me." Halligan said that Appellant apparently believed Halligan "had set him up on a drug deal." Halligan testified that he begged Appellant for his life. Appellant left, but promised to return later.
>
> Halligan testified that the one time he had seen Appellant, Appellant came to his house with Eloy Guerrero. While Halligan and Guerrero planned a drug deal which never materialized, Appellant stayed on the telephone trying, Halligan believed, to arrange other drug transactions. He said that he relayed this information to Deputy Henry, although Deputy Henry had previously testified that Appellant's name did not appear in his files before the alleged assault.

2

>Halligan denied ever making a case against Appellant. When asked by the prosecutor if Appellant had threatened to kill him because he was an informer, Halligan answered, "I don't think he knew that at the time." Later, on redirect examination, he explained that although he did not know if Appellant actually knew he was a confidential informant, he believed that Appellant thought he was.
>
>Although the drug dealer Guerrero was arrested coming from Halligan's house only two weeks before the assault, both Deputy Henry and Halligan testified that Halligan never attempted to make a case against Appellant.

The State's evidence during the guilt/innocence phase of the trial consisted of testimony from Detective Steve Henry, complainant Gary Halligan, Sergeant Jason Bean, Officer Chris Turner, Court Coordinator Denise Benge and Deputy Ron Rathburn. The sole defense witness was Randy Bare, who was the Petitioner's roommate. The Petitioner did not testify. The Twelfth Court of Appeals found that the evidence was legally and factually sufficient.

<u>Discussion and Analysis</u>

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners was severely limited by the Antiterrorism and Effective Death Penalty Act of 1996. The new provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim-– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-413 (2000); *Childress v. Johnson*, 103 F.3d at 1224-1225. The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Williams v. Taylor*, 529 U.S. at 405-06. A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). A state application denied without written order by the Texas Court of Criminal Appeals, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

As will be shown, the Petitioner is not entitled to relief because he has not shown, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002).

The Petitioner's first ground for relief is ineffective assistance of counsel. The Petitioner alleged that his trial attorney, Clifton Roberson, failed to pursue his one plausible line of defense, which was that he was not at Halligan's house to retaliate or assault him but to retrieve a couch. He complained that an affidavit from Gary Todd Williams was not admitted into evidnce, which would have supported his claim that he was there to retrieve a couch. The Petitioner argued that the affidavit should have been admitted as a present sense impression exception to hearsay. He noted that the State used the testimony of Randy Bare as an excuse to bring up his prior criminal history, and he complained that his attorney did not object or make a running objection about his prior criminal history. He argued that counsel should have filed a motion in limine to keep the evidence about his criminal history from the jury. He argued that the evidence of his prior conviction was used to improperly portray him as a criminal generally and undermined his credibility. He asserted that counsel's actions could not be viewed as sound trial strategy. He also alleged that counsel was not fully prepared and did not make a meaningful pretrial investigation.

In order to succeed on a claim of ineffective assistance of counsel, a habeas corpus petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance.

*Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. He must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id*. at 697.

The state trial court issued an order to Clifton Roberson to file a response to the Petitioner's allegations. Roberson submitted an affidavit, which included the following:

> After being appointed by the Honorable Jack Skeen, Jr., I went to the Smith County District Attorney's Office to retrieve the Discovery material for Mr. Stout's case. Upon reviewing the discovery materials, I went to the Smith County Jail whereby Mr. Stout and I went over the information. Mr. Stout informed me that he did not have a gun in his possession when he went to the alleged victim's home. Mr. Stout also stated he did not threaten the victim with a gun. Based on this information from Mr. Stout, my law office set-up a polygraph exam by Gary Loveday. It was stated by Mr. Loveday that Mr. Stout showed deception about being in possession and threaten the victim with a gun. I confronted Mr. Stout with the results of the polygraph and the allegations in the discovery material. Afterwards, I went to the Smith County Criminal District Attorney's Office about a plea offer. Mr. Murphy (A D.A.) and I discussed a plea deal for twelve (12) years in the Texas Department of Criminal Justice, due to Mr. Stout's criminal history. I informed Mr. Stout of the plea deal and his mother. Mr. Stout informed me that he wanted a trial and to call certain witnesses to testify on his behalf. I informed Mr. Stout if he was found guilty by the jury and due to his criminal history, he would probably be assessed a term above the plea offer.
>
> Mr. Stout's case went to trial on the 29th day of November 2005 through December 1, 2005. I called the witnesses to testify on behalf of Mr. Stout, after the State of Texas had rested. Mr. Stout informed me and the Court that he did not want to testify, due to his criminal history. During the trial of Mr. Stout's case, I put forth his defense and the witnesses he wanted to testify. As I told Mr. Stout before trial, I cannot predict what twelve (12) people will decide, but I will represent him to the best of my ability.
>
> I can assure the Court that I effectively represented Mr. Stout and put forth the best legal defense. The verdict of any case is returned on the decision of the twelve (12) citizens and their view of the facts with the aide of the law to guide them. I wish I could guarantee all my clients a Not Guilty verdict, however that would be false and misleading. I do guarantee all my clients that I will give them effective assistance/representation at trial.

Roberson did not make a point-by-point rebuttal of the Petitioner's various claims.

The Petitioner's first complaint about his trial attorney's representation was that counsel failed to pursue the one plausible line of defense available, which was that he was not at Halligan's house to retaliate against him but to retrieve a couch. The record reveals, however, that counsel noted in his opening remarks to the jury that the evidence would show that the Petitioner was at Halligan's house to pick up a sofa and that he told Halligan that he would return soon to pick it up. Counsel attempted to offer evidence in support of the claim through witness Randy Bare but was prevented from doing so when the Court sustained the State's hearsay objection. Indeed, Bare testified that the Petitioner wanted to borrow his Jeep Cherokee and that he had only a vague idea what the Petitioner wanted to do with it. The only information that he had was from what the Petitioner told him. The exclusion of such testimony was properly kept out as hearsay. Nonetheless, for purposes of the Petitioner's ineffective assistance of counsel claim, the dispositive factor is that counsel endeavored to pursue the line of defense desired by the Petitioner.

The Petitioner also alleged that his attorney failed to adequately investigate the case, prepare for trial or submit an affidavit from Gary Todd Williams. Counsel had a duty to conduct a reasonable amount of pretrial investigation. *See Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir. 1986). The duty includes seeking out and interviewing potential witnesses. *Lockhart*, 782 F.2d at 1282; *Williams v. Beto*, 354 F.2d 698 (5th Cir. 1965).

To succeed on the claim, however, the Petitioner must show that had counsel investigated the claim he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on his behalf. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. den.*, 469 U.S. 1041 (1984). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). The Petitioner, however, made only a vague reference that an affidavit from Gary Todd

7

Williams should have been admitted. He did not offer the affidavit. He has not shown that Williams would have offered favorable testimony or would have been willing to testify in his behalf. Morever, to the extent that the Petitioner only wanted an affidavit from Williams offered into evidence, the State correctly noted that such affidavit would have been inadmissible hearsay. The Petitioner has presented only conclusory allegations of ineffective assistance of counsel with respect to counsel's alleged failure to investigate the case, being prepared for trial or failure to present evidence from Gary Todd Williams.

The Court further notes that the State offered an explanation why the Petitioner did not want Gary Todd Williams to actually testify. Williams had at least four prior criminal convictions out of Smith County. His prior criminal history could be used to impeach his credibility. Nonetheless, the dispositive factor is that an affidavit from Williams would have been inadmissible, and counsel was not ineffective for failing to offer an inadmissible affidavit.

The Petitioner also complained that counsel failed to object when evidence was offered by the State concerning his criminal history. The record reveals, however, that counsel did object. The Petitioner's complaint lacks any basis in fact. The trial court overruled the objection. The evidence was properly admitted due to hearsay evidence offered through the defense witness Randy Bare.

The Petitioner also alleged that counsel was ineffective for failing to file pretrial motions that would have effectively resulted in the admission of Gary Todd Williams' affidavit. He offered only conclusory allegations in support of this claim. He also complained that counsel failed to file a motion in limine to keep out his criminal history. However, the State automatically was forbidden to discuss his prior criminal history unless he opened the door to his credibility. A motion in limine was unnecessary. Moreover, the Director correctly noted that mere speculation that but for the lack of a motion in limine, the trial court would have excluded the evidence relating to his prior conviction, and such speculation does not satisfy the Petitioner's burden to establish prejudice. *See Bradford v. Whitley*, 953 F.3d 1008, 1012 (5th Cir. 1992).

8

Overall, the Petitioner has not shown that his attorney's representation was deficient or that he was prejudiced by such deficient representation. The ineffective assistance of counsel claim lacks merit.

The ineffective assistance of counsel claim lacks merit for the additional reason that the Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See Moore v. Cockrell*, 313 F.3d at 882.

The Petitioner's second ground for relief involve alleged violations of due process. The Petitioner initially argued that the evidence was insufficient. He correctly noted that the evidence against him came from Gary Halligan, and he characterized Halligan's testimony as questionable. He questioned how he could be guilty of retaliation for something he did not even know about. He argued that Halligan's testimony amounted to perjury. He also complained about the exclusion of a sworn affidavit from Gary Todd Williams. He also denied the State's assertion that Randy Bare's testimony opened the door for his criminal history to be submitted into evidence.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court held that in a federal habeas corpus proceeding challenging the sufficiency of the evidence supporting a state conviction, a petitioner is entitled to relief where "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." In applying the standard, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id*. at 320. The Court added that this "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n. 16. *See Brown v. Collins*, 937 F.2d 175, 180 (5th Cir. 1991). "Under *Jackson*, [a federal court] may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991), *cert. denied*, 506 U.S. 833 (1992).

9

The Twelfth Court of Appeals listed the elements of the offense for which the Petitioner was convicted as follows:

1. a person
2. intentionally and knowingly
3. threatens imminent bodily injury
4. upon a person
5. by threatening to kill the person by
6. shooting him with a deadly weapon, a handgun
7. in retaliation for the threatened person's service as an informant or person who reported a crime.

As previously noted, the Twelfth Court of Appeals dealt with the claim that the evidence was insufficient. The Twelfth Court of Appeals applied the *Jackson v. Virginia* standard in finding that the evidence was sufficient. The Twelfth Court of Appeals discussed the elements of the offense and found that they were satisfied. More specifically, Halligan testified that the Petitioner placed a gun to his head and threatened to kill him "for what he did." With respect to the Petitioner's claim that how could he be guilty of retaliating for something he did not even know about, Halligan testified he was not sure that the Petitioner knew he was an informant, but he believed that he knew. The evidence provided by Halligan was sufficient to show that the Petitioner intentionally and knowingly threatened imminent bodily injury to Halligan by threatening to kill Halligan by shooting him with a deadly weapon, a gun, in retaliation for Halligan's service as an informant who reported a crime. The Petitioner is not entitled to relief because he has not shown that no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

The Twelfth Court of Appeals noted that Halligan's testimony was somewhat inconsistent; nonetheless, it was the province of the jury to consider the credibility of the witnesses and resolve conflicts and inconsistencies in the evidence. *See, e.g., Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The citations

listed in the opinion are consistent with federal law. *See United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001); *Weeks v. Scott*, 55 F.3d 1059, 1063-64 (5th Cir. 1995).

The Petitioner also alleged that Halligan's testimony amounted to perjury. The Fifth Circuit dealt with the issue of perjury in *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). A petitioner must prove that the prosecution knowingly presented or failed to correct materially false testimony during trial. 303 F.3d at 337. Due process is not implicated by the prosecutions's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements. *Id.* Perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness' testimony and conflicts between reports, written statements and the trial testimony of prosecution witnesses. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). The Petitioner has offered nothing other than noting that there were inconsistencies in Halligan's testimony. He has not shown that the prosecution knowingly presented or failed to correct false testimony during trial.

The Plaintiff again complained about the exclusion of an affidavit by Gary Todd Williams and the evidentiary decision that Bare's testimony opened the door for the introduction of his criminal history. Federal courts review habeas petitions for a "constitutional infraction of the defendant's due process rights which would render the trial as a whole fundamentally unfair." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988). "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992). The standard of review in the context of habeas corpus proceedings is very narrow, and not a broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citations omitted).

The Fifth Circuit has also emphasized that the role of the federal court is more limited than that of the state court. "An evidentiary error in a state trial does not justify federal habeas corpus

relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause. . . . Thus, even the erroneous admission of prejudicial testimony does not justify habeas corpus relief unless it is 'material in the sense of a crucial, critical, highly significant factor.'" *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983), *cert. denied*, 469 U.S. 873 (1984).

The Petitioner has not shown that the exclusion of Williams' affidavit was erroneous. He likewise failed to show that such exclusion denied him fundamental fairness. Similarly, he failed to show that the introduction of his criminal history was an erroneous evidentiary ruling or that it denied him fundamental fairness.

Finally, the Petitioner's allegation that the Texas Rules of Evidence were violated does not provide a basis for federal habeas corpus relief, which concerns the violation of federal rights. *See Manning v. Blackburn*, 786 F.2d 710, 711 (5th Cir. 1986). It is not the function of federal habeas courts to review the interpretation of state law. *Weeks v. Scott*, 55 F.3d at 1063. Similarly, the Petitioner's allegations about alleged infirmities in the state habeas corpus proceedings do not provide a basis for federal habeas corpus relief. *Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984).

Overall, the Plaintiff's claims concerning alleged violations of due process do not provide a basis for federal habeas corpus relief. The ground for relief should be denied for the additional reason that the petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See Moore v. Cockrell*, 313 F.3d at 882.

In conclusion, the Court finds that the Petitioner is not entitled to federal habeas corpus relief and that the petition for a writ of habeas corpus should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §

2253(c)(1)(A). Although the Petitioner has not yet filed a notice of appeal, the Court feels compelled to address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Petitioner is not entitled to a certificate of appealability as to his claims. It is accordingly

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the cause of action is **DISMISSED** with prejudice. It is further

**ORDERED** that all motions by either party not previously ruled on are hereby **DENIED**.

It is finally

**ORDERED** that a certificate of appealability is **DENIED**.

So **ORDERED** and **SIGNED** this **29** day of **March, 2007.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE